## Case No. 6,221.

### HAUGH et al. v. TEXAS & P. R. CO.

[3 Cent. Law J. 447; 22 Int. Rev. Rec. 257; 3 N. Y. Wkly. Dig. 174.] [1]

Circuit Court, W. D. Texas. April Term, 1876.[2]

CONSTRUCTION OF ROAD—FELLOW SERVANTS—SCIENTER OF MASTER—WHO ARE FELLOW SERVANTS.

1. It is the duty of a railroad company to use all reasonable care in the proper construction of its road, and in supplying it with the necessary equipments, including properly constructed engines and their several parts, and in the selection of competent and skilful agents and subordinates to supervise, inspect, repair and regulate its machinery.

2. The corporation or master is not liable for injuries suffered by one employee solely through the carelessness or negligence of another employee of the same master, engaged in the same general service or ·business, and under the same general control.

3. Each employee engaged with others in the service of a common master takes upon himself the liability to injury resulting from the negligence of his co-employees.

4. Before a master can be made liable to a servant for an injury resulting from the incompetency or unskilfulness of another servant of the same master, it must be affirmatively shown, not only that the latter servant was unskilful or incompetent, but that the master knew it, and did not exercise proper care in his selection. And if the injury arise from a defect or insufficiency of machinery it must be shown that the master had positive knowledge of such defect or insufficiency, and failed to exercise proper care in providing a remedy.

5. All agents and employees on a railroad who are engaged in the same general employment and business of keeping up, running and operating the road are fellow servants. Master-mechanics, foremen of round houses, and other persons engaged in the repair of machinery and rolling-stock are fellow servants with engineers, conductors and other persons engaged in running trains.

[This was an action by Annie Haugh, in her own right and as guardian of her infant son, James A. Haugh, against the Texas & Pacific Railway Company to recover damages for the death of her husband, Wentworth C. Haugh, an engineer in charge of one of defendant's trains.]

Robertsons, Herndon, Turner & Lipscomb and George L. Hill, for plaintiff.

F. B. Sexton and William Stedman, for defendant.

DUVAL, District Judge (charging jury). This is a suit brought on the 9th June, 1875, both for compensatory and exemplary damages, by Annie Haugh, of the state of Iowa,

1 [Reprinted from 3 Cent. Law J. 447, by permission; 3 N. Y. Wkly. Dig. 174, contains only a partial report.]

2 [Reversed in 100 U. S. 213.]

in her own right, and as the surviving wife of Wentworth C. Haugh, and as the natural guardian of her infant son, James A. Haugh, for the death of her husband, the said Wentworth C. Haugh. She alleges that her said husband being in the employment of the defendant, and in charge of engine No. 4, running between Shreveport and Marshall, was killed by said engine being thrown from the track on or about the 8th day of March, 1874, and that such death was the result of wilful and gross negligence of defendant in not furnishing a safe and reliable engine; that the engine in question was thrown from the track by a steer attempting to cross in front of it, and in consequence of the defective construction and arrangement of the pilot or cow-catcher, which failed to throw said animal from the track. She further alleges that the steam whistle attached to said engine was not properly and securely fastened to the boiler, so that when the engine fell over, the fastening of the whistle blew out, and a jet of scalding steam and hot water was thrown upon her husband, thereby causing his death, etc. The defendant denies all these allegations, and avers that engine No. 4 was entirely safe and reliable; that the pilot or cow-catcher was properly constructed and attached to the same; that the engine was thrown from the track in consequence of a bull or steer running between the driving wheels and forward trucks, under such circumstances as rendered it impossible for human sagacity or exertion to prevent the accident. Defendant further avers that the whistle of said engine was securely fastened to the boiler, in accordance with the usual approved mode, and that if it came out of said engine at all, it did not blow out, but was knocked or torn out when the engine was thrown off the track; that if there was any defect about the engine, the same was well known to the deceased, and not known to the defendant, and that said deceased, who had run other engines belonging to defendant, was at his own request assigned to the run between Marshall and Shreveport, well knowing that said engine No. 4 belonged to, and was used upon, said run, etc.

These are the material issues made by the pleadings, and upon them, and the facts in evidence, I have to instruct the jury:

1. That it is the duty of a railroad company or corporation to use all reasonable care in the proper construction of its road, and in supplying it with the necessary equipments, including properly constructed engines and their several parts, and the necessary and proper material for their repair; also, to select competent and skilful agents and subordinates to supervise, inspect, repair and regulate the machinery, and to regulate and control the operations of the road. The corporation or master, however, is not liable for injuries suffered by one employee, solely through the carelessness or negligence of another employee of the same master, engaged in the same general service or business, and under the same general control. Each employee engaged with others, in the service of a common master, takes upon himself the liability to injury resulting from the negligence of his co-employees. The hazard is incident to the nature of the employment in which he enters. There is no implied warranty of life or guaranty against injury. The employee takes his place subject to all the dangers incident to the position. The master is only bound to provide competent and proper machinery and materials, and to furnish skilful and careful employees to keep the same in repair and safe condition. If this be done and one of the workmen or employees thus provided is simply guilty of negligence resulting in an injury to another employee, it is not the negligence of the master, and the corporation is not responsible. In such case, to render the master or corporation liable, the injury must have resulted to one servant, not from the mere negligence of another, but from his incompetency or unskilfulness, and this must be shown satisfactorily, and if the injury arises from a defect or insufficiency in the machinery or any of its necessary parts, which have been furnished by the master to the servant, a knowledge of this defect or insufficiency must be brought home to the master, or proof given that he was ignorant of the same through his own negligence and want of proper care. In other words, it must be shown that he either knew, or ought to have known the defects which caused the injury, in order to render him liable. A different rule, however, would apply as respects the liability of the master to a passenger over the road. All agents and employees on a railroad, who are engaged in the same general employment and business of keeping up, running and operating the road, are fellow servants. Master-mechanics, foreman of round houses, and other persons engaged in the repair of machinery and rolling-stock for a railroad, are fellow servants with the engineers, conductors and other persons engaged in running trains.

Under the general principles of law as thus announced, I charge the jury:

2. That, if they believe from the testimony that the accident which resulted in the death of W. C. Haugh, was produced by a bull running at, or under the locomotive or tender, of which said Haugh was the engineer, and throwing the same off the track, and that such accident occurred under such circumstances as that human skill and foresight could not prevent or reasonably provide against it, then the defendant was not guilty of negligence, and you will find for the defendant.

3. If you believe from the evidence that engine No. 4 was, when purchased and set

up by the defendant, a standard and safe engine, and that the defendant exercised due and proper care in the employment of competent, prudent and skilful agents to keep it in the same condition, and that the accident in question was not one resulting from the want of such competency, prudence and skilfulness, then you will find for the defendant.

4. If there was a defect in engine No. 4, or in the pilot thereto attached, and you believe from the evidence that the same was known to the deceased while he was running said engine, and before the happening of the accident described in plaintiff's petition, or if you believe from the evidence that some days before the accident, the pilot attached to said engine was slightly damaged, or knocked out of square, but that the same was repaired by the agents or servants of the defendant who were skilful and competent to make such repairs, and that after such repairs were made, said pilot was considered safe by those whose duty it was to make them and determine on their safety, and that the deceased afterwards received and ran said engine and pilot, then, in either event, you are instructed that the plaintiff can not recover, and you will find for the defendant. But,   •

5. If the jury are satisfied from the evidence before them, that the death of the deceased was owing, not to the negligence simply, but to the incompetency or want of skill on the part of any servant or agent of the defendant, who was working in the defendant's machine shops, then the defendant would be liable, and the plaintiff would be entitled to recover such actual pecuniary damage only, as the evidence may satisfy you the plaintiffs have sustained, and as you may think proportioned to the injury resulting from such death.

The testimony in this case is in some respects quite conflicting. It is the duty of the jury to reconcile all discrepancies, if they can, but whether they can or not, it is their right to weigh the whole of the evidence, and give to each and every part of it such weight and credence as they may think proper. And in weighing the testimony and determining its credibility, the jury can consider the manner and mode of testifying by the witnesses, their acquaintance with the subject about which they testify, their interest in the result of the suit, if any, and any other circumstances they may think proper to take into account.

Verdict for defendant.

[Upon error to the supreme court this decision was reversed, and a new trial granted, for the purpose of submitting to the jury the question whether or not, under all the circumstances, and in view of the promises to remedy the defect, the engineer was not wanting in due care in continuing the use of the engine. Opinion by Mr. Justice Harlan. See 100 U. S. 213.]